[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Representing the Plaintiff: Thames Plaza 101 Water Street Norwich, CT 06360. BY: LORRAINE ECKERT, ESQ., Representing the Defendant: 53 Granite Street New London, CT 06320 BY: KATHLEEN M. HARKINS, ESQ.,
Elaine S. Wiltsie, CSR, RPR New London Superior Court 70 Huntington Street New London, CT 06320
THE COURT: Good morning, Ladies and Gentlemen. All right. This is docket number FA92-0102132, Janet Wimpfheimer — I'm sorry. James Wimpfheimer versus Patricia Wimpfheimer. All right.
Will counsel please identify themselves for the record?
MS. ECKERT: Lorraine Eckert for the plaintiff James Wimpfheimer.
MS. HARKINS: Kathleen Harkins representing Patricia Wimpfheimer, the defendant.
THE COURT: All right, thank you. Let me just do a little procedural history here. CT Page 11825
This hearing relates to a motion for articulation and clarification filed by Attorney Eckert on behalf of Plaintiff Wimpfheimer on June 6th, 2001.
This past Monday this matter for the first time was brought to my attention at approximately five p.m. by way of a written stipulation signed by Attorney Eckert and Attorney Harkins. Attorney Harkins was present on August 27th when this was given to the Court; Attorney Eckert was not.
The stipulation indicated that the parties agree that this Court would articulate its decision, or file an articulation concerning its decision in late May on a contempt citation brought against Mr. Wimpfheimer by Mrs. Wimpfheimer, five p.m., on August 27, 2001, which was the first time that I was even aware that this motion for articulation had been pending.
I denied the motion without prejudice, frankly because I wanted both counsel present, and I wanted a precise explanation of the motion for articulation from both counsel.
I had first thought that it might be necessary to bring counsel up to Hartford, because that's where I'm being assigned starting next Tuesday. In examining my schedule, I noticed a hole in my schedule this morning, so I thought I would come over here and save you both a trip to Hartford and see if we couldn't clear this up this morning.
And with that procedural history in mind, let me ask you, Ms. Eckert, what is it specifically that you want this Court to articulate?
MS. ECKERT: Okay, your Honor, if I begin with your Memorandum of Decision, May 31st, 2001, you attached Exhibit A, which explained the computation of the child support arrearages and the timing question that has to do with 1/1/01 through 5/28/01.
And you noted on Exhibit A that the payments for that period of time were zero. And you indicated in your memo of decision that Mr. Wimpfheimer owed $1710 for unreimbursed medical expenses.
I think those are the two starting points. First of all, in the hearing that we had, there were representations made —
THE COURT: By whom?
MS. ECKERT: — by Attorney Harkins, for the defendant, that there were unreimbursed medical expenses of $3420. CT Page 11826
And then there was testimony from both parties that Mr. Wimpfheimer had paid some amount towards that sum and that reduced the amount to $1710 that was due to Mrs. Wimpfheimer for unreimbursed medicals.
And hence, your Honor ordered in the memo of decision that he would pay $1710 for unreimbursed medical expenses.
Then on the question of the arrearage for that period of time, January 1st, 2001 to 5/2/01.
THE COURT: I'm sorry, 1/20 — sorry —
MS. ECKERT: 1/1/01 through 5/29/01, you stated on your Exhibit A attached to the memo of decision that he had paid no money towards support during that period of time.
THE COURT: Okay.
MS. ECKERT: And Mr. Wimpfheimer did make some payments starting in January at the rate of $70 a week, and he also made a lump sum payment towards his former spouse of $1288 during the month of January.
THE COURT: And was that for support or were those medical expenses?
MS. ECKERT: That was towards support.
THE COURT: Okay.
MS. ECKERT: My only thoughts at this point in time, these amounts are not reflected in Exhibit A, for whatever reason.
THE COURT: I've gone over my notes, and I may be able to help you address your articulation. But I want to get it clear for everyone on the record what you're looking for.
MS. ECKERT: Those are the two issues, payment of the 1288 lump sum and whatever weekly payments made for the year 2001.
And my suggestion was going to be that simply the support arrearage would be reduced by those amounts. And if there was a question as to whether he paid it, perhaps he could produce cancelled checks.
THE COURT: Now, do you have any quarrel with the 3420, which is apparently divided in the half by the Court and made 1710? CT Page 11827
MS. ECKERT: No I don't have any problem with that. No, no.
THE COURT: Okay. That's what I wanted to understand. Ms. Harkins, let me just address you:
Do you know whether the 1288 lump sum in support was made?
MS. HARKINS: I have to apologize to the Court, your Honor, I've been through my file, I took it apart. My client, generally, when she received payment would make a copy of the check and send it on to me. I cannot find it in my file. That does not mean that she did not receive it, it simply means if she did, she did not send a copy to me.
One of the difficulties I have is that when I filed my revised proposed orders on April *** 19th, one of the things I did was, hoping to aid the Court in terms of the kind of claim for relief that I thought was appropriate on, I listed those payments that she had confirmed to me.
And in reviewing that exhibit, and speaking with Attorney Eckert yesterday, I definitely have determined that there are three separate payments that were listed on this exhibit that was reviewed between myself and my client for 2001 for the period in question. And they total $980.
When your Honor entered his orders, the total amount that was ordered was $15,925. My client received a check. And I have had, unfortunately, returned to me yesterday a check in the amount of $11,527. And that was received on June — July 5th.
THE COURT: So that appears to be in compliance with my order that he was trying to make some lump sum towards arrearage.
MS. HARKINS: What it was, your Honor, the amount of child support, 9,715, and the medical unreimbursed of 1710, which totals fifteen thousand — I mean $11,425. So it was off by a hundred and two dollars for those two figures, but did not include the $4500 that your Honor awards as attorneys' fees.
THE COURT: Okay.
MS. HARKINS: So, when that check came in, and I went back to the file and did the math off of the judgment. I said to my client, oh, yes, it appears that he was slightly off by a hundred dollars. But he's paid the support and unreimbursed as ordered.
I then filed a motion for contempt dated July 31 saying he had not paid the $4500 that you ordered. CT Page 11828
THE COURT: And counsel fees?
MS. HARKINS: There was no explanation with this check as to what it was or what it wasn't.
THE COURT: But that's a good sign that some large chunk of this has been paid and that's commendable. All right. Here is what I can tell you. And again, I wasn't aware of the pendency of this motion for articulation, which was apparently filed on — approximately 5:00 on August 27th.
I've gone over my notes, which I do keep on trial. I have not gone over transcripts. What I am going to do today — and let me tell you before I do it — is what I'm going to do in a moment is grant the motion for articulation as best I can with my notes, and make a couple suggestions or orders as to how this matter could possibly be cleared up.
Does that sound about right to everybody?
MS. ECKERT: Yes, your Honor, fine.
THE COURT: I'm not going to deal with the contempt today, because frankly, I haven't got evidence in front of me, and hopefully given this past compliance that maybe you can also reclaim your motion before another judge. I'm trying to do as much as I can before I leave so this matter will be cleaned up.
My notes show a reference to a $1,288 lump sum payment. I did not make a finding of fact with respect to that payment, and it was not encompassed in the arrearages that I set out in the exhibit that I appended to my orders.
Again, I'm working off notes, and I have not had the benefit of a review of the transcript for the logistical reasons I just cited. It is the Court's belief and would be the Court's intention that if in fact that $1,288 support payment was made, it should be deducted from the support arrearage owed by Mr. Wimpfheimer to Mrs. Wimpfheimer.
To that extent, I grant Mr. Wimpfheimer's motion for articulation, and I've articulated as best I can based on my notes.
It would be the Court's intention that Mr. Wimpfheimer verify this to Mrs. Wimpfheimer's satisfaction. If, in fact, he's overpaid his support payments, that can be adjusted. CT Page 11829
If there is a dispute about this, it should be brought to the attention of the superior court based on the articulation that I will sign as my — I'll get a transcript of this and sign this as my written memo of decision in this matter.
I don't think it necessarily has to come back to this Court if there is a dispute. I will file this as an articulation. If there is a dispute about that — which I hope there won't be — you can bring it back to the attention of the superior court in this district, this judicial district.
Now, I clearly did not make findings with respect to — as best I can determine, again from my notes — on the $70 I had a note in there that he hadn't made any payments. And I was reacting, I believe, to that note.
Therefore, it's clear to me I didn't make a finding — again, clear to me as best I can determine from my notes — that I did not make a finding about $70 a week payments.
I therefore grant your motion for articulation and state the following: To the best of this Court's knowledge, it did not take into consideration the $70 payment that Mr. Wimpfheimer purports to have made. If, in fact, Mr. Wimpfheimer can substantiate those payments, those also should be reduced from the arrearage I determined in my memorandum of decision.
Again, as with other lump sums, if it cannot be determined by competent verification that those were made, then they shouldn't be reduced.
Here too I suggest that the parties meet or their counsel meet and go over the verification and do an accounting. And if you have a dispute about that, it can be brought back to the attention of this Court in this district here too. I don't think it has to come before this judge, now that I have articulated to the best of my ability.
Secondly, if you wish to order transcripts, the transcripts would be the best record or at least would be a good record; but I did not have the benefit of the transcript, so I'm working off notes.
Again, I do not believe that this Court considered either the lump sum payment or the purported $70 a week payments in its decision. It is not clear to the Court that I made findings that those payments were made. And I believe the matter should be resolved in the manner I have just set forth for you, to that extent I am hereby articulating and clarifying to CT Page 11830 the best of my ability the decision I rendered in May.
I will hereby request a written transcript of what I have just said and of this proceeding, which will be the Court's written Memorandum of Decision.
Does anyone have any questions about what I have just done?
MS. HARKINS: No, your Honor.
MS. ECKERT: No, your Honor.
THE COURT: Okay. I will sign this. I hope it is somewhat helpful to you. Does it appear to counsel that this matter then can therefore be resolved?
MS. ECKERT: I would hope so. I would hope that my client could simply produce cancelled checks.
THE COURT: Counsel?
MS. HARKINS: Your Honor, certainly if she has been paid this amount, I'm hopeful that she has information with regards to it. As I indicated to the Court, I do believe that we did at the time of the hearing in April indicate to the Court that some $980 had been paid.
THE COURT: I'm not saying that you didn't. I'm not saying that you didn't. I'm just saying that based on my notes, I don't find that I incorporated those into my finding on the arrearage. And again, it's to the best of my ability based on my notes.
This motion for articulation was pending since June 7th. I got it — the first time I became aware of it was on August 27th. What I have tried to do is go over the notes to the best of my ability.
I think it should be — I think the burden should be on Mr. Wimpfheimer to show if he made the payments.
What's the matter Ms. Harkins?
MS. HARKINS: Nothing, your Honor. We simply — in terms of my client, we simply get a check with no explanation. The money has been disbursed to my client, and unfortunately, $4,500 of your order has not been paid. And you know, it's — it's unfortunate.
THE COURT: That's for another day. It's clear. And you know, I was CT Page 11831 reacting — I can only react to today to your stipulation. And if there is a contempt motion outstanding for the non-payment of that, that's going to have to be brought to the attention of the Court.
I would urge, through counsel, Mr. Wimpfheimer, that if there is not an appeal being taken here, that this order should be complied with, including what I consider to be a just award — and I note both sides probably disagree on the amount I awarded there — but what I consider to be a just award of counsel fees. And I think they should be — I think they should be paid.
Now, if somebody has a legal defense to that, they can raise it in the appropriate manner, but I think I've complied to the best of my ability today with — the best I can with the articulation.
I think the Exhibit and my notes would seem to indicate that I didn't credit any payments for those periods and figured out the arrearages as best I could, computing in what I considered to be the new rate of support from a particular point in time.
It's the best I can do by way of articulation.
MS. ECKERT: Thank you, your Honor.
THE COURT: All right. Good luck to both of you. Thank you.
MS. HARKINS: Thank you, your Honor.
 (Court adjourned.) CERTIFICATION
I, Elaine S. Wiltsie, Certified Court Reporter, do hereby certify that the within and foregoing is a true and correct transcription of the stenographic notes taken in the matter of JAMES WIMPFHEIMER versus PATRICIA WIMPFHEIMER, heard before the Honorable Richard W. Dyer, a Judge of the Superior Court in the Judicial District of New London at Norwich on the 30th day of August 2001.
Elaine S. Wiltsie Certified Court Reporter
 SUPERIOR COURT STATE OF CONNECTICUT
CHAMBERS OF MANCHESTER, CONNECTICUT CT Page 11832 RICHARD W. DYER 9/7/01 RE: FA 92-0102132S
Dear Clerk,
This transcript will serve as my written memo of decision on it's motion for articulation.
Please ensure that it is placed in the Wimpfheimer v. Wimpfheimer
file.
Thanks,
Best regards, Richard W. Dyer